1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10                                 ----oo0oo----

11

12   JORGE MANZO VALENCIA,              No. 1:25-cv-01550 WBS JDP

13              Petitioner,

14        v.                            MEMORANDUM AND ORDER RE:
                                        PETITIONER'S MOTION FOR
15   CHRISTOPHER CHESTNUT, et al.,      TEMPORARY RESTRAINING ORDER

16              Respondents.

17

18                                 ----oo0oo----

19   I.   Background

20              Before the court is petitioner Jorge Manzo Valencia's

21   motion for a temporary restraining order.  Petitioner asks the

22   court to temporarily restrain respondents from continuing to

23   detain him without a bond hearing.  (Docket No. 5 at 5, 18-19.)

24              Petitioner, a native and citizen of Mexico, arrived in

25   the United States in 1996.  (Id. at 5.)  He is

26   employed as a foreman for a roofing company, and he has three

27   children who are citizens of the United States.  (Id. at 5-6.)

28

                                      1

1  Petitioner was charged with driving under the influence in 2005
2  and 2006.  (Id. at 6.)  He also received a citation for
3  purchasing alcohol for a minor in 2010.  (Id.)

4          On October 29, 2025, petitioner was detained by federal
5  law enforcement agents following a traffic stop.  (Id. at 7;
6  Docket No. 8 at 2.)  He is presently in civil detention at the
7  California City Detention Center in California City.  (Docket
8  Nos. 5 at 7; 8 at 2.)

9          On November 14, 2025, petitioner filed the instant
10  motion for a temporary restraining order.  (See Docket No. 5.)
11  Petitioner argues that (1) he was unlawfully detained pursuant to
12  8 U.S.C. § 1225(b)(2)'s mandatory detention requirement, when he
13  should have been subject to the discretionary detention
14  provisions of 8 U.S.C. § 1226; and (2) his detention violates the
15  procedural protections conferred by the Due Process Clause.[1]
16  (Id.)

17  II.  Discussion

18          "The standard for a [temporary restraining order] is
19  the same as for a preliminary injunction."  Rovio Entm't Ltd. v.
20  Royal Plush Toys, Inc., 907 F. Supp. 2d 1086, 1092 (N.D. Cal.
21  2012) (citing Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,
22  240 F.3d 832, 839 n.7 (9th Cir. 2001)).  "A plaintiff seeking a
23  preliminary injunction must establish that he is likely to
24  succeed on the merits, that he is likely to suffer irreparable
25  harm in the absence of preliminary relief, that the balance of
26  equities tips in his favor, and that an injunction is in the

27  ─────────────
28          [1]    At oral argument, petitioner's counsel withdrew his
    Administrative Procedure Act claim.

1   public interest." Winter v. Nat. Res. Def. Council, Inc., 555

2   U.S. 7, 20 (2008).  The last two factors "merge when the

3   Government is the opposing party." Nken v. Holder, 556 U.S. 418,

4   435 (2009).

5          Likelihood of success on the merits is "the most

6   important factor in determining whether a preliminary injunction

7   is warranted." Garcia v. County of Alameda, 150 F. 4th 1224,

8   1230 (9th Cir. 2025) (internal citations and quotation marks

9   omitted).  A mere possibility of success is insufficient to meet

10  this factor; instead, a petitioner must demonstrate "a strong

11  likelihood of success on the merits." Save Our Sonoran, Inc. v.

12  Flowers, 408 F. 3d 1113, 1120 (9th Cir. 2005).

13       a.   Statutory Claim

14            i.   Likelihood of Success on the Merits

15          Petitioner argues that he is likely to succeed on the

16  merits of his statutory claim because the government improperly

17  applied 8 U.S.C. § 1225(b)(2) to subject him to that provision's

18  mandatory detention requirement.  (Docket No. 5 at 13-14.)

19  Respondents argue that Section 1225(b)(2) applies to petitioner,

20  who was properly subject to mandatory detention under that

21  provision.  (Docket No. 8 at 4.)

22          8 U.S.C. § 1225(b)(2)(A) mandates detention of "an

23  alien who is an applicant for admission, if the examining

24  immigration officer determines that an alien seeking admission is

25  not clearly and beyond a doubt entitled to be admitted."  Section

26  1225(a)(1) clarifies that "[a]n alien present in the United

27  States who has not been admitted . . . shall be deemed for

28  purposes of this Act an applicant for admission." Id. §

3

1   1225(a)(1).

2      Section 1226(a), on the other hand, states that "[o]n a
3   warrant issued by the Attorney General, an alien <u>may</u> be arrested
4   and detained" pending their final removal decision.  8 U.S.C. §
5   1226(a) (emphasis added).  Pursuant to the Laken Riley Act,
6   subsection (c) of Section 1226 was amended to mandate detention
7   for noncitizens who have been charged with certain crimes.  8
8   U.S.C. § 1226(c)(1)(E).

9      On July 8, 2025, the Department of Homeland Security
10   ("DHS"), in coordination with the Department of Justice ("DOJ"),
11   issued a policy memorandum which "require[ed] all 'applicants for
12   admission' . . . to be mandatorily detained during removal
13   proceedings pursuant to § 1225(b)(2)."  <u>Garcia v. Noem</u>, No. 25-
14   cv-02180 DMS MMP, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025).
15   This position was subsequently adopted by the Board of
16   Immigration Appeals in <u>Matter of Yajure Hurtado</u>, 29 I. & N. Dec.
17   216 (BIA 2025).

18      The court acknowledges at the outset the fluctuating
19   and complex tangle of issues presented by this recent shift in
20   approach to detention.  <u>See, e.g.</u>, <u>Echevarria v. Bondi</u>, No. cv-
21   25-03252 PHX DWL (ESW), 2025 WL 2821282 (D. Ariz. Oct. 3, 2025)
22   (noting application of the statutes "as presenting a complicated
23   and debatable question"); <u>cf.</u> <u>Torres v. Barr</u>, 976 F. 3d 918, 923
24   (9th Cir. 2020) ("The complex provisions of the INA have provoked
25   comparisons to a 'morass,' a 'Gordian knot,' and 'King Minos's
26   labyrinth in ancient Crete." (internal citations and quotation
27   marks omitted)).

28      Here in the Eastern District of California, recent

1  decisions have largely rejected the government's interpretation
2  of Section 1225(b)(2) as applicable to all "applicants for
3  admission."  See, e.g., Lepe v. Andrews, No. 25-cv-01163 KES SKO
4  (HC), 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); Rodriguez v.
5  Kaiser, No. 25-cv-01111 KES SAB, 2025 WL 2855193 (E.D. Cal. Oct.
6  7, 2025); Ortiz Donis v. Chestnut, No. 1:25-cv-01228 JLT SAB,
7  2025 WL 2879514 (E.D. Cal. Oct. 9, 2025); Menjivar Sanchez v.
8  Wofford, No. 1:25-cv-01187 SKO (HC), 2025 WL 2959274 (E.D. Cal.
9  Oct. 17, 2025).

10      Other district courts have also reached the result that
11  Section 1226(a), not Section 1225(b)(2), provides the appropriate
12  framework for noncitizens already residing in the United States.
13  See, e.g., Garcia, 2025 WL 2549431; Martinez v. Noem, No. EP-25-
14  CV-430 KC, 2025 WL 2965859 (W.D. Tex. Oct. 21, 2025) (acceptance
15  of DHS's new interpretation represents "a minority view");
16  Buenrostro-Mendez v. Bondi, No. CV H-25-3726, 2025 WL 2886346
17  (S.D. Tex. Oct. 7, 2025) (noting that "almost every district
18  court to consider the issue" has rejected DHS's view).  On the
19  other hand, at oral argument, counsel for the government, who
20  appeared to be more familiar with the issues presented in this
21  case and similar cases throughout the country, pointed to
22  numerous instances in which courts found that Section 1225(b)(2)
23  provides the appropriate framework.

24      But "[w]hat governs the case is the text of the
25  statute, not what other district courts have concluded."  Mejia
26  Olalde v. Noem et al., No. 1:25-cv-00168 JMD, at 2 (E.D. Mo. Nov.
27  10, 2025).  Thus, in line with recent decisions by Judge
28  Bencivengo in Chavez v. Noem, --- F. Supp. 3d ----, 2025 WL

1    2730228 (S.D. Cal. Sept. 24, 2025) and Judge Divine in <u>Mejia</u>

2    <u>Olalde</u>, No. 1:25-cv-001568 JMD, and for the reasons below, the

3    court finds petitioner is unlikely to prevail on his statutory

4    arguments.

5          Respondents argue that Section 1225's mandatory

6    detention requirement for noncitizens who are "applicants for

7    admission" petitioner.  In determining whether noncitizens who

8    have not been lawfully admitted to the United States are

9    "applicants for admission" within the meaning of this statutory

10   scheme, it is first necessary to decide whether they are deemed

11   to be "seeking admission" within the meaning of 8 U.S.C. §

12   1225(b)(2)(A).

13          Several courts rejecting the applicability of Section

14   1225 to physically present noncitizens have emphasized that

15   "seeking" must imply "some sort of present-tense action." <u>Lepe</u>,

16   2025 WL 2716910, at *5 (citing <u>Martinez v. Hyde</u>, 792 F. Supp. 3d

17   211, 218 (D. Mass. 2025)).  In other words, unless a noncitizen

18   is "actively seeking lawful entry," they are not an "applicant

19   for admission." (<u>Id.</u>) (citing <u>Lopez Benitez v. Francis</u>, --- F.

20   Supp. 3d ----, 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025)).

21   Some of these cases also cite the Supreme Court's opinion in

22   <u>Jennings</u> for the proposition that Section 1225 "authorizes the

23   Government to detain certain aliens <u>already in the country</u>

24   pending the outcome of removal proceedings," as opposed to

25   noncitizens "<u>seeking</u> admission into the country." <u>Menjivar</u>

26   <u>Sanchez</u>, 2025 WL 2959274, at *2 (citing <u>Jennings v. Rodriguez</u>,

27   583 U.S. 281, 289 (2018) (emphasis in original)).

28          The court declines to adopt this interpretation of

1    "applicant for admission."  The statutory language may cover a

2    pro-active engagement with the process of becoming a lawful

3    entrant, but courts both in this circuit and elsewhere have

4    recognized that the term also functions as a legal designation --

5    describing an individual's legal status for purposes of the

6    statutory removal scheme -- rather than a description of present

7    conduct.[2]  The suggestion that petitioner may evade the

8    designation of "applicant for admission" merely because he has

9    already entered the United States elides the fact that he was

10   never lawfully admitted, regardless of what steps he may have

11   taken to acquire that status.

12         Reliance on <u>Jennings</u> is also misplaced.  <u>Jennings</u> did

13   not declare unequivocally that Section 1225 does not apply in

14   cases such as petitioner's.  Rather, the Court stated that §

15   1225(b)(2) "serves as a catchall provision that applies to all

16   applicants for admission not covered by" the more specific

17   categories of § 1225(b)(1).  <u>Jennings</u>, 583 U.S. at 287; <u>see also</u>

18

_____

19         [2]    <u>See, e.g.</u>, <u>Torres v. Barr</u>, 976 F. 3d 918, 929 (9th Cir.

20   2020) (under § 1225, "all immigrants who have not been lawfully
     admitted, regardless of their physical presence in the country,

21   are . . . in the position of an 'applicant for admission'"); <u>Pena
     v. Hyde</u>, No. CV 25-11983 NMG, 2025 WL 2108913 (D. Mass. July 28,

22   2025) ("An alien is an 'applicant for admission' if he has
     arrived to or is present in the country but has not yet been

23   lawfully granted admission."); <u>Pipa-Aquise v. Bondi</u>, No. 1:25-cv-
     01094 MSN WBP, 2025 WL 2490657 (E.D. Va. Aug. 5, 2025) ("An alien

24   who arrives in the United States, or is present in this country
     but has not been admitted, is considered an applicant for

25   admission." (internal citations and quotation marks omitted));
     <u>Vargas Lopez v. Trump</u>, No. 8:25CV526, 2025 WL 2780351 (D. Neb.

26   Sept. 30, 2025) ("[J]ust because [petitioner] illegally remained
     in this country for years does not mean that he is suddenly not

27   an 'applicant for admission' under § 1225(b)(2)."); <u>Mejia Olalde</u>,

28   No. 1:25-cv-00168 JMD, at 5 (same).

                                    7

1  <u>Vargas</u>, 2025 WL 2780351, at *9 ("The Court concludes that the

2  plain language of § 1225(b)(2) and the 'all applicants for

3  admission' language of <u>Jennings</u> permit the DHS to detain

4  [petitioner] under § 1225(b)(2).")  Moreover, the Court's

5  introductory language in <u>Jennings</u> is clear: "[A]n alien who

6  'arrives in the United States,' or 'is present' in this country

7  but 'has not been admitted,' is treated as 'an applicant for

8  admission.'"  583 U.S. at 287.

9       At oral argument, petitioner's counsel argued that a

10  broad understanding of Section 1225 would render superfluous

11  other specifying provisions of Section 1226, including the Laken

12  Riley Act, which amended Section 1226(c) to include specific

13  categories of noncitizens subject to mandatory detention (e.g.,

14  those convicted of crimes).  "If every 'applicant for admission'

15  . . . is already subject to mandatory detention under section

16  1225(b)(2)(A) . . . there would be no need for the [Laken Riley

17  Act]." <u>Lepe</u>, 2025 WL 2716910, at *6 (citing <u>Maldondo v. Olson</u>,

18  No. 25-cv-3142 (SRN/SGE), 2025 WL 2374411, at *12 (D. Minn. Aug.

19  15, 2025) ("The Court will not find that Congress passed the

20  Laken Riley Act to 'perform the same work' that was already

21  covered by § 1225(b)(2).")

22       This argument reverses the order of events.  The Laken

23  Riley Act was passed before the new interpretation of Section

24  1225 was issued.  The Laken Riley Act could not therefore

25  "perform the work" of the expansive reading of Section 1225,

26  because that work had not yet been done.  And as the court in

27  <u>Chavez v. Noem</u> pointed out, the new definition of "applicant for

28  admission" does not render the Laken Act superfluous because

1  "[t]he Attorney General may still exercise her detention

2  discretion under § 1226(a) for any other aliens falling under

3  that subsection who are not charged with specific crimes"

4  enumerated by the amendment.  Chavez, 2025 WL 2730228, at *5; see

5  also Mejia Olalde, No. 1:25-cv-00168 JMD, at 9 ("[I]t is

6  perfectly possible to interpret the[se] provisions as . . .

7  overlapping, and Congress often takes a 'belt and suspenders

8  approach' to legislation." (quoting Atl. Richfield Co. v.

9  Christian, 590 U.S. 1, 14 n.5 (2020)).  The statutory carve-out

10  added by the Laken Riley Act does not therefore strike this court

11  as inherently nullified by respondents' interpretation, which may

12  in fact be "performing the work" that was begun by the Act, that

13  is, preventing individuals like the one who killed Laken Riley

14  from benefitting from the discretionary detention provision of

15  Section 1226.

16      Because petitioner has failed to demonstrate a

17  likelihood of success on the merits of his statutory claim, the

18  court "need not consider the other [preliminary injunction]

19  factors." California v. Azar, 911 F.3d 558, 575 (9th Cir. 2018).

20      b.  Due Process Claim

21      Petitioner dedicates just four sentences of his motion

22  to arguing that his detention violates the Due Process Clause

23  because it was instituted without a hearing.  (Docket No. 5 at

24  15.)  Petitioner proclaims, without elaboration or support, that

25  individuals subject to civil detention are entitled to procedural

26  due process protections.  (Docket No. 5 at 15.)  This blanket

27  assertion appears to be contradicted by governing case law.  See,

28  e.g., Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206,

1    212 (1953) (class of civilly detained noncitizens not subject to

2    procedural due process protections); <u>Angov v. Lynch</u>, 788 F.3d

3    893, 898 (9th Cir. 2015) (same).

4            At oral argument, petitioner's counsel attempted to

5    justify his failure to provide further authority or argument on

6    his due process claim by saying he lacked time.  Counsel

7    certainly had more time to prepare his motion than the court has

8    had to decide it.  Petitioner, as the "master" of his pleadings,

9    is "responsible for articulating cognizable claims."  <u>Newtok</u>

10    <u>Village v. Patrick</u>, 21 F. 4th 608, 616 (9th Cir. 2021).  Any time

11    constraints were counsel's own making.  "It is not the Court's

12    duty to make legal arguments for [petitioner] that [he] do[es]

13    not raise and the Court will not do so."  <u>Citizens for Quality</u>

14    <u>Educ. San Diego v. Barrera</u>, 333 F. Supp. 3d 1003, 1031 n.20 (S.D.

15    Cal. 2018).

16            IT IS HEREBY ORDERED that petitioner's motion for a

17    temporary restraining order (Docket No. 5) be, and the same

18    hereby is, DENIED.

19            IT IS FURTHER ORDERED that if petitioner wishes to have

20    a hearing on his motion for preliminary injunction, he shall file

21    a brief in support of that motion no later than December 1.  The

22    government may file its opposition no later than December 8.  The

23    court will then take the motion under submission.  If petitioner

24    does not file a brief by December 1, his motion shall be denied

25    for the reasons set forth in this order.

26    Dated:  November 17, 2025

27

28

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

10